IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

TRUMAN JERMAINE LOCKE                                                                    PLAINTIFF

      v.                                     Civil No. 2:15-cv-02062

SHANE DAVIS, Jail Administrator,
Scott County Detention Center; and
KIM OWENS, Sergeant, Scott County
Detention Center                                                                         DEFENDANTS

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This is a civil rights case filed by the Plaintiff pursuant to 42 U.S.C. § 1983. Plaintiff, Truman Jermaine Locke, proceeds *pro se* and *in forma pauperis.*

The case is before me on a Motion for Summary Judgment (Doc. 26) filed by the Defendants. On January 12, 2016, a Summary Judgment Hearing was held. The Plaintiff appeared by video from the Mississippi County Work Release Center of the Arkansas Department of Correction, and he testified in response to the Summary Judgment Motion. At the times relevant to this case, Plaintiff was incarcerated in the Scott County Detention Center (SCDC). The Motion (Doc. 26) is now ready for resolution.

### 1.  Background

Plaintiff was booked into the SCDC on April 8, 2014, and he remained incarcerated there until June 19, 2014. *Defendants' Exhibit* (hereinafter *Defts' Ex.*) 1-B at 1. At approximately 3:18 p.m., on April 13, 2014, Plaintiff testified he woke up and began moving around the pod. *Id.* at 7. He stated he did not see water on the floor.

Plaintiff slipped on water from a leak in the cell block and fell. Plaintiff testified that he lost consciousness for an unknown time period, had two abrasions on his forehead, and injured his back in the fall. Plaintiff testified that when he regained consciousness there were several people standing

around him. He requested medical treatment. He indicates his shirt was wet and he was freezing cold. Following the fall, Plaintiff testified he began having migraines.

Plaintiff testified that after his fall he learned there was a leak in the ceiling. He further testified that other inmates had requested cleaning supplies to clean the water up. According to Plaintiff, cleaning supplies were not provided and nothing was done about the leak.

Jailer Allen advised Jail Administrator Davis of Plaintiff's fall. *Defts' Ex.* 1-B at 7. Davis indicates he was not provided any information that suggested Plaintiff needed emergency medical attention. *Defts' Ex.* 1. Davis directed that Plaintiff be taken to the "tank" and that the jailers keep an eye on him. *Defts' Ex.* 1-B at 7.

Plaintiff was taken to the "tank" where he noticed the abrasions on his forehead and dried blood on his forehead. He remained in the tank until 9:00 or 10:00 p.m. He was then taken to an isolation cell located under master control.

Sergeant Owens was notified about Plaintiff's fall and his request for medical treatment. *Defts' Ex.* 2 at ¶ 2. She felt, based on the information relayed, that Plaintiff did not need emergency medical treatment. *Id.* at ¶¶ 3 & 7. "Because the Detention Center did not have any spare officers to take Truman Locke to the hospital immediately, [Sergeant Owens] advised Officer [Joe] Allen to move Truman Locke to an isolation cell where he could be monitored." *Id.* at ¶ 4.

Plaintiff believes he should have received emergency medical treatment. He maintains Owens did not follow the SCDC's emergency health care policy. *Defts' Ex.* 1-A. Plaintiff concedes, however, that his injuries were not very serious. He further testified that his medical records do not indicate that the delay in being taken to the hospital in anyway adversely effected his medical condition.

On April 14, 2014, at 9:38 a.m., Plaintiff was taken to Mercy Hospital for evaluation. *Defts'*

*Ex.* 3. He was diagnosed as having painful respiration and abdominal pain in the right lower quadrant. *Id.* at 2. He was released with a prescription for Naproxen, one 500 mg. tablet, twice daily, with meals, for fourteen days. *Id.* at 6; *Defts' Ex.* 1-B at 20.

Plaintiff testified that the Naproxen prescription was never filled. He states both Allen and Owens stated it was not their responsibility to get prescriptions filled.

According to the SCDC emergency health care policy and the routine health care policy, the escorting officer is to return all prescriptions and follow-up instructions to the jail administrator. *Defts' Ex.* 1-A at 2 & 3. The jail administrator "will arrange to have any prescriptions filled so the detainee can start taking prescribed medications without delay." *Id.* at 3.

Plaintiff testified he was given little if any pain medication. The jail administrator, Shane Davis, kept Tylenol, or other pain relievers, in his office. Plaintiff admitted he did receive Tylenol at times but more often than not by the time the jailer got to the pod Plaintiff was in all pain relieving medication was gone.

By affidavit, Davis states he viewed the video footage of Plaintiff's "alleged fall." *Defts' Ex.* 1 at ¶ 6. He states he did not see the Plaintiff fall but instead "saw [Plaintiff] slowly place his head on the floor." *Id.* However, when Davis went to retrieve the video footage it was gone. *Id.* He states he does not know "how or why the video footage is no longer in our system." *Id.* With respect to the prescription, Davis states he did not refuse to provide Plaintiff with medication. *Id.* at ¶ 9. However, no explanation is offered as to why the prescription was not filled.

### 2.  Applicable Standard

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the

disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 401 (8th Cir. 1995).

The moving party has the burden of showing the absence of a genuine issue of material fact and that they are entitled to judgment as a matter of law, but the nonmoving party may not rest upon mere denials or allegations in the pleadings and must set forth specific facts to raise a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The Court must view all evidence and inferences in a light most favorable to the nonmoving party. *See McCleary v. ReliaStar Life Ins. Co.*, 682 F.3d 1116, 1119 (8th Cir. 2012). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a Court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### 3. Discussion

Defendants contend they are entitled to summary judgment because: (1) there is no evidence they acted with deliberate indifference toward an excessive risk of harm or injury to the Plaintiff; (2) they are entitled to the protection of qualified immunity; (3) they were not deliberately indifferent to Plaintiff's serious medical needs; and, (4) there is no basis for official capacity liability.

Section 1983 imposes civil liability upon one:

> who under color of any statute, ordinance, regulation, custom or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws.

42 U.S.C. § 1983.

### A. Slip and Fall

The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The Cruel and Unusual Punishment Clause of the Eighth Amendment forbids conditions that involve the "wanton and unnecessary infliction of pain," or are "grossly disproportionate to the severity of the crime." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

"A prisoner alleging an Eighth Amendment violation must prove both an objective and subjective element. *Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004) (*citing Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "The defendant's conduct must objectively rise to the level of a constitutional violation by depriving the plaintiff of the minimal civilized measure of life's necessities. The defendant's conduct must also reflect a subjective state of mind evincing deliberate indifference to the health or safety of the prisoner." *Revels*, 382 F.3d at 875 (citations and internal quotation marks omitted). Deliberate indifference is established when the plaintiff shows "the defendant was substantially aware of but disregarded an excessive risk to inmate health or safety." *Revels,* 382 F.3d at 875.

Here, there is no suggestion that the water leak was an ongoing problem or that any person had fallen in the same area before Plaintiff fell. In short, there is simply nothing to suggest the Defendants failed to act in the face of a risk of harm to the health or safety of the detainees at the SCDC. *See e.g., LeMaire v. Maass*, 12 F.3d 1444, 1457 (9th Cir. 1993) ("slippery prison floors ... do not state even an arguable claim for cruel and unusual punishments") (citation omitted).

"[E]very injury suffered by an inmate does not necessarily translate into constitutional

liability for prison officials." *Osolinski v. Kane*, 92 F.3d 934, 937 (9th Cir. 1996). While I do not hold that slippery floors can never establish a claim of constitutional dimension, I believe that under the circumstances of this case no claim of constitutional dimension is stated. *See e.g., Frost v. Agnos*, 152 F.3d 1124, 1129 (9th Cir. 1998) (inmate was on crutches and fell and injured himself several times – his repeated injuries and unsafe conditions state a claim where slippery floors without protective measures create sufficient danger). There is simply nothing to support a finding that the Defendants failed to maintain a safe area for the detainees or that they were aware there was a substantial risk detainees would fall because of the leak and that a fall would cause serious harm. *See e.g., Perkins v. Grimes*, 161 F.3d 1127, 110 (8th Cir. 1998) (Plaintiff must prove the officials knew of facts from which they could infer a substantial risk of serious harm existed and that the officials drew that inference).

    **B. Medical Care**

"Where a prisoner needs medical treatment prison officials are under a constitutional duty to see that it is furnished." *Crooks v. Nix*, 872 F.2d 800, 804 (8th Cir. 1989) (*citing Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). The Eighth Amendment deliberate indifference standard applies to all denial of medical care claims. *Carpenter v. Gage*, 686 F.3d 644, 650 (8th Cir. 2012). The deliberate indifference standard has both an objective and a subjective component. *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997).

To prevail on his claim, Plaintiff must demonstrate that (1) he suffered an objectively serious medical need, and (2) the defendant actually knew of the medical need but, subjectively, was deliberately indifferent to it. *Grayson v. Ross*, 454 F.3d 802, 808-09 (8th Cir. 2006).

"An objectively serious medical need is one that either has been diagnosed by a physician as requiring treatment, or is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Jones v. Minnesota Dep't of Corrections*, 512 F.3d 478, 481 (8th Cir. 2008) (internal quotation marks and citation omitted).

"Deliberate indifference is equivalent to criminal-law recklessness, which is more blameworthy than negligence, yet less blameworthy than purposefully causing or knowingly bringing about a substantial risk of serious harm to the inmate." *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) (internal quotation marks and citation omitted).

I do not believe there are any genuine issues of material fact as to whether Defendants exhibited deliberate indifference to Plaintiff's serious medical needs. Plaintiff was taken to the hospital for treatment less than twenty-four hours after his fall. While it appears Plaintiff's prescription was not filled, nothing in the record suggests this was anything more than an oversight or negligence on Davis' part. Plaintiff conceded that his injuries were not that serious. Given this, there can be no deliberate indifference on the Defendants' part.

### C. Official Capacity

As Plaintiff is bringing an official capacity claim, his claim is against Scott County and he must establish Scott County "itself caused the constitutional violation at issue." *Parrish v. Ball*, 594 F.3d 993, 997 (8th Cir. 2010) (internal quotation marks and citation omitted). To do so, Plaintiff must demonstrate "that there was a policy, custom, or official action that inflicted an actionable injury." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999).

"To establish the existence of a policy, [Plaintiff] must point to a deliberate choice or a

guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Jenkins v. Hennepin County*, 557 F.3d 628, 633 (8th Cir. 2009) (internal quotation marks and citation omitted). To prevail, Plaintiff must "also show that the policy was unconstitutional and that it was the moving force behind the harm he suffered." *Id.*

"[A] custom can be shown only by adducing evidence of a continuing, widespread, persistent pattern of unconstitutional conduct." *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999). "A plaintiff must also show either that policymakers were deliberately indifferent to the misconduct or that they tacitly authorized it." *Jenkins*, 557 F.3d at 634. "Liability for an unconstitutional custom . . . cannot arise from a single act." *McGaautha v. Jackson County*, 36 F.3d 53, 57 (8th Cir. 1994).

On the basis of the record before me, I find there are no genuine issues of fact as to whether Scott County had a policy, practice, or custom, that was the moving force behind any of the alleged violations of Plaintiff's constitutional rights.

### D. Qualified Immunity

Qualified immunity "is an *immunity from suit* rather than merely a defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis in original). It entitles an individual to not be subject to trial or the other burdens of litigation and "is effectively lost if a case is erroneously permitted to go to trial." *Id.* Accordingly, it is important that the question of qualified immunity be resolved as early as possible in the proceedings. *O'Neil v. City of Iowa City*, 496 F.3d 915, 917 (8th Cir. 2007) (*citing Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Schatz Family ex rel. Schatz v. Gierer*, 346 F.3d 1157, 1160 (8th Cir. 2003)).

Analyzing a claim of qualified immunity requires a two-step inquiry. *Jones v. McNeese*, 675

F.3d 1158, 1161 (8th Cir. 2012). In one step, the deciding court determines whether the facts demonstrate a deprivation of a constitutional right. *Id.* (*citing Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010)). In the other, the court determines whether the implicated right was clearly established at the time of the deprivation. *Id.* (*citing Parrish*, 594 F.3d at 1001). In considering those steps at the summary judgment phase, a district court is required to view the genuinely disputed facts in the light most favorable to the non-moving party, provided the record does not so contradict the facts as to render so viewing them unacceptable to any reasonable juror. *O'Neil*, 496 F.3d at 917.

As discussed above, I do not believe the facts, viewed in the light most favorable to the Plaintiff, establish the existence of any violation of Plaintiff's constitutional rights. Having answered the first inquiry negatively, I need not address the remaining inquiry.

### 4.  Conclusion

For the reasons stated, I recommend that Defendants' Motion for Summary Judgment (Doc. 26) be **GRANTED** and this case **DISMISSED WITH PREJUDICE.**

**The parties have fourteen (14) days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 3rd day of June, 2016.

/s/ Mark E. Ford
HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE